## TILLER, EXECUTOR, *v.* ATLANTIC COAST LINE RAILROAD CO.

No. 335. Argued January 5, 1945.—Decided January 15, 1945.

---

[26] See *St. John* v. *Brown; Allen* v. *Moe, supra,* Note 10.

*Mr. J. Vaughan Gary* for petitioner.

*Mr. Collins Denny, Jr.,* with whom *Messrs. Thomas W. Davis* and *J. M. Townsend* were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner's husband was killed while in the performance of his duties as an employee of respondent railroad. She filed suit under the Federal Employers Liability Act, 45 U. S. C. § 51 *et seq.,* alleging that her husband's death was caused by the negligent operation of a railroad car which struck and killed him, and because of respondent's failure to provide him a reasonably safe place to work. The District Court directed a verdict in favor of the railroad and the Circuit Court of Appeals affirmed. 128 F. 2d 420. We reversed, holding that there was sufficient evidence of the railroad's negligence to require submission of the case to the jury. *Tiller* v. *Atlantic Coast Line R. Co.,* 318 U. S. 54, 68, 73. On remand, petitioner amended her complaint in the District Court, over respondent's objection, by charging that, in addition to the negligence previously alleged, the decedent's death was caused by the railroad's violation of the Federal Boiler Inspection Act, 45 U. S. C. § 22 *et seq.,* and Rules and Regulations prescribed by the Interstate Commerce Commission pursuant to the provi-

sions of that Act. The jury returned a verdict in favor of petitioner, and the District Court refused to set it aside. The Circuit Court of Appeals reversed, 142 F. 2d 718, and certiorari was granted because of the importance of questions involved relating to the administration and enforcement of the Federal Employers Liability Act and the Federal Boiler Inspection Act.

Here, as in the Circuit Court of Appeals, respondent has again argued that the evidence of negligence charged in the original complaint was insufficient to justify submission of the case to the jury. Slight variations in the evidence presented at the two trials are said to require a different conclusion than that which we reached on the first review of this case.

As to this contention of respondent, the Circuit Court of Appeals said on the second appeal that

"Since the evidence at the second trial in respect to the movement of the cars was substantially the same as at the first, this decision [i. e. our decision in 318 U. S. 54] required the District Judge notwithstanding the opposition of the defendant to submit the case to the jury. Our duty upon this appeal to affirm the judgment . . . would have been equally clear if the plaintiff had been content at the second trial to rest upon the legal theory outlined in the opinion of the Supreme Court; but the plaintiff amended the complaint by specifying a new item of negligence which was submitted to the jury as an alternative ground for recovery. Since the verdict for the plaintiff was general and did not specify the ground on which it rested, it becomes necessary for us to determine whether there was sufficient evidence to justify the submission of this new theory to the jury over the defendant's objection."

We reaffirm our previous holding that the evidence justified submission to the jury of the issues raised by the original allegations of negligence.

The Circuit Court of Appeals, however, held that there was no evidence that the alleged violation of the Boiler Inspection Act was "the proximate cause of the accident in whole or in part," and that the District Court should therefore have directed that this issue be found in favor of the railroad. The complaint alleged, in this respect, that the decedent's death was caused by violation of Rules and Regulations prescribed by the Interstate Commerce Commission pursuant to the provisions of the Federal Boiler Inspection Act. That Act broadly authorizes the Commission to prescribe standards "to remove unnecessary peril to life or limb."[1] The complaint alleged a violation of Rule 131 of the Commission, which reads as follows:

*"Locomotives used in yard service.*—Each locomotive used in yard service between sunset and sunrise shall have two lights, one located on the front of the locomotive and one on the rear, each of which shall enable a person in the cab of the locomotive under the conditions, including visual capacity, set forth in rule 129, to see a dark object such as there described for a distance of at least 300 feet ahead and in front of such headlight; and such headlights must be maintained in good condition."

The locomotive which pushed backwards the string of cars one of which struck and killed the deceased was operated in violation of the literal words of this Regulation. It was being used in "yard service" at respondent's Clopton Yards "between sunset and sunrise." There was no light on the rear of the locomotive, which was moving in reverse towards the deceased.[2]

---

[1] *Lilly* v. *Grand Trunk Western R. Co.*, 317 U. S. 481, 486; *United States* v. *B. & O. R. Co.*, 293 U. S. 454.

[2] The contention is made that since this locomotive was used in road service as well as yard service the Rule should be held inapplicable to it as a matter of law. Such a narrow interpretation of the

It was for the jury to determine whether the failure to provide this required light on the rear of the locomotive proximately contributed to the deceased's death. The ruling of the court below that it was not a proximate cause was based on this reasoning: The general railroad practice in yard movements is to push cars attached to the rear of an engine; no express regulation of the Commission prohibits this; in the instant case the cars attached to the engine necessarily would have obscured any light on the rear of that engine; the light so obscured would not have enabled the engineer to see 300 feet backwards so as to avoid injuring the deceased nor would the light have been visible to the deceased standing at or near the track ahead of the backward movement. Therefore, the court concluded, the failure to furnish the light was not proximately related to the death of Tiller.

Assuming, without deciding, that the railroad could consistently with Rule 131 obscure the required light on the rear of the engine, it does not follow that, as a matter of law, failure to have the light did not contribute to Tiller's death. The deceased met his death on a dark night, and the diffused rays of a strong headlight even though directly obscured from the front, might easily have spread

---

Regulation would be wholly out of keeping with the liberal construction which we have constantly said must be given to this and the Safety Appliance Act, 45 U. S. C. A., § 1 *et seq.* *Lilly* v. *Grand Trunk Western R. Co., supra,* 486.

We think the court's charge to the jury on this point was consistent with a proper interpretation of the rule. That charge was:

"If the jury believes from the evidence that the road engine, on the night Mr. Tiller was injured, in making the movements it made in said yard was being used by the defendant to classify its cars and make up its train, then the said engine was then being used in yard service. On the other hand, if the jury believes from the evidence that the said road engine was backing into slow siding for the purpose of getting out of the way of the yard engine so that said yard engine could classify cars and make up trains, then said locomotive in making said movement was not being used in yard service."

themselves so that one standing within three car-lengths of the approaching locomotive would have been given warning of its presence, or at least so the jury might have found. The backward movement of cars on a dark night in an unlit yard was potentially perilous to those compelled to work in the yard. *Tennant* v. *Peoria & P. U. R. Co.*, 321 U. S. 29, 33. And "The standard of care must be commensurate to the dangers of the business." *Tiller* v. *Atlantic Coast Line R. Co., supra,* 67.

An additional ground of the reversal of this cause by the Circuit Court of Appeals was that part of the District Court's charge to the jury set out in the margin.[3] It instructed the jury that if they believed that the back-up movement was an unusual and unexpected one, and a departure from the general practice in making up that particular train, and that Tiller had no reasonable cause to believe that such a movement would be made, it became the duty of the defendant to give him adequate warning of that movement and if the jury found that the defendant failed to perform this duty, and that failure was the proximate cause of the injury, its verdict should be for the plaintiff. The original complaint alleged this as one of the grounds of negligence. The Circuit Court of Appeals held that there was substantial testimony to support a finding that the movement was an unusual one.

---

[3] "The Court charges the jury that if you believe from the evidence that Mr. Tiller was struck while the engine and cars of the defendant were making a back-up movement on the night of March 20th, 1940; that such movement was an unusual and an unexpected one and a departure from the general practice followed in making up train No. 209; that Mr. Tiller on the occasion in question was working on or near the slow siding without knowing or having reasonable cause to believe that such a movement would be made, then it became and was the duty of the defendant in making such movement to give adequate warning of the same, and if the jury believe from the evidence that the defendant failed to perform such duty and as a proximate result of such failure, Mr. Tiller received the injuries from which he died, then the jury should return a verdict for the plaintiff."

Nevertheless, because no railroad rule or custom prohibited such an unusual movement, because some of the evidence showed that the same movement had been performed on other occasions, and because Tiller was familiar with the local situation, the Circuit Court of Appeals held that the railroad owed no duty to warn him of such an unusual movement. We cannot say that a jury could not reasonably find negligence from the evidence which showed such an unprecedented departure from the usual custom and practice in backing cars, without giving "adequate warning of the movement." Compare *Toledo, St. L. & W. R. Co. v. Allen,* 276 U. S. 165, 171.[4] The charge of the District Court in this respect was correct.

Respondent seeks to support the Circuit Court's reversal of the cause on the ground that the District Court erroneously permitted petitioner to amend her original complaint. The injury occurred March 21, 1940. Suit was filed under the Federal Employers Liability Act on January 17, 1941. The amendment alleging violation of the Boiler Inspection Act was filed June 1, 1943, which was more than three years after the death. Federal Employers Liability Act, § 6, provides that a suit under that Act must be commenced within three years after injury. The contention is that the three-year limitation statute provided in the Federal Employers Liability Act barred the amendment which rested on the Boiler Inspection Act.

We are of the opinion that the amendment was properly permitted. Section 15 (c) of the Federal Rules of

[4] See *Chesapeake & Ohio R. Co. v. De Atley,* 241 U. S. 310; *Chesapeake & Ohio R. Co. v. Peyton,* 253 F. 734 (C. C. A. 4); *Ferringer v. Crowley Oil & Mineral Co.,* 122 La. 441, 47 So. 763; *Louisville & Nashville R. Co. v. Asher's Adm'r,* 178 Ky. 67, 198 S. W. 548; *Director General v. Hubbard's Adm'r,* 132 Va. 193, 111 S. E. 446; 2 Shearman & Redfield on Negligence (rev. ed.), 566, 607; cf. *Davis v. Philadelphia & Reading R. Co.,* 276 F. 187.

Civil Procedure provides that "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." The original complaint in this case alleged a failure to provide a proper lookout for deceased, to give him proper warning of the approach of the train, to keep the head car properly lighted, to warn the deceased of an unprecedented and unexpected change in the manner of shifting cars. The amended complaint charged the failure to have the locomotive properly lighted. Both of them related to the same general conduct, transaction and occurrence which involved the death of the deceased. There was therefore no departure. The cause of action now, as it was in the beginning, is the same—it is a suit to recover damages for the alleged wrongful death of the deceased. "The effect of the amendment here was to facilitate a fair trial of the existing issues between plaintiff and defendant." *Maty* v. *Grasselli Co.*, 303 U. S. 197, 201. There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in the respondent's yard.[5]

We find no error in the District Court's disposition of the case. The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.

*Reversed.*

The CHIEF JUSTICE and MR. JUSTICE ROBERTS are of the opinion that the judgment of the Circuit Court of Appeals should be affirmed.

---

[5] See *Friederichsen* v. *Renard*, 247 U. S. 207; *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62; *United States* v. *Powell*, 93 F. 2d 788, 790.