**BOWLES, Adm'r, OPA, v. TANKAR GAS, Inc.**

No. 1149.

District Court, D. Minnesota, Fourth Division.

April 12, 1946.

Amos J. Coffman, Regional Atty., George E. Leonard, Regional Litigation Atty., and Bernard W. Friedman, Special Litigation Atty., O. P. A., all of Chicago, Ill., and Harris J. Nuernberg, Dist. Enforcement Atty., and Hyman L. Greenberg, Enforcement Atty., O. P. A., both of St. Paul, Minn., for plaintiff.

232

Brill, Maslon, Grossman & Brill, of Minneapolis, Minn., for defendant.

NORDBYE, District Judge.

This matter is now before the Court upon plaintiff's motion to amend his complaint.

The facts and history of the matter are as follows: The original complaint was filed on June 10, 1944. It alleged that defendant at certain specified times sold a total of $1,196,887 gallons of "stove and light gas" for $60,117.50 in excess of the ceiling prices established by Maximum Price Regulation No. 88, as amended. Maximum Price Regulation No. 88, as amended, set ceiling prices both for industrial naphtha and for petroleum products other than industrial naphtha for the period of the alleged violations. Shortly after receiving the complaint, defendant requested, and received, from plaintiff a bill of particulars which set forth the sales allegedly made at over-ceiling prices. According to defendant, however, this bill of particulars was confusing, because, in defendant's opinion, it stated ceiling prices for gasoline (which is a petroleum product other than industrial naphtha), but the sales enumerated therein were not sales of gasoline or natural gasoline or blending naphthas. So defendant wrote to plaintiff requesting a clarification of plaintiff's position. Plaintiff's counsel at that time—a Mr. Hamilton—replied by the so-called "Hamilton letter", stating, "It is our contention that irrespective of what the product was designated as when sold, it was in fact a grade of gasoline," and that "as such is covered in the Regulation under Article 1, Section 1.1, entitled, 'To What Products This Regulation is Applicable,' covering all grades of gasoline and blending naphtha."

After receiving this letter, defendant took the position that the complaint was limited to a claim of over-ceiling prices for gasoline, including natural gasoline and blending naphtha. Its counsel contended that under the complaint plaintiff was not entitled to prove any violations of ceiling prices for industrial naphtha or violations of ceiling prices on petroleum products other than industrial naphtha, except the gasolines and blending naphtha noted. He appears to have recognized, however, that the complaint might have permitted proof on all of these types of petroleum products prior to the letter in question.

Plaintiff's present counsel indicates that he believes that the original complaint is sufficient to permit proof of over-ceiling prices on all petroleum products covered by Maximum Price Regulation No. 88, as amended, (including industrial naphtha) in spite of the letter in question, but he declares that he desires to amend so that no pitfalls will be encountered concerning the scope of the pleadings. And he now seeks permission to amend the original complaint.

The proposed amended complaint contains three counts. All relate to the same sales covered by the original complaint. Count I, as a practical matter, restates the original complaint as it is interpreted by defendant, although plaintiff's counsel out of precaution states that it is intended to cover all petroleum products, other than industrial naphtha, which are covered by Maximum Price Regulation No. 88, as amended. Count II alleges that the sales noted under Count I were sales of an industrial naphtha and solvent product and asks for a mandatory injunction compelling defendant to apply for a ceiling price for such a product. Count III seeks treble damages for violation of the ceiling price which plaintiff would set by virtue of defendant's application required by Count II. That is, plaintiff anticipates that the ceiling price set by the Administrator by virtue of the defendant's application to the Administrator pursuant to an order under Count II for the setting of ceiling prices will be lower than the price for which defendant has sold the product in question. The amendment is based upon Maximum Price Regulation No. 88, as amended, and its predecessor regulations. It also is based upon Maximum Price Regulation No. 510, in which some of the provisions of Maximum Price Regulation No. 88, as amended, were incorporated during the period of the alleged violations here. Briefly, therefore, the original complaint seeks treble damages for alleged over-ceiling sales of a petroleum product not

included within the classification of industrial naphtha under Maximum Price Regulation No. 88, as amended. Plaintiff believes that this could include more than a gasoline produce, but defendant contends that it does not. As a practical matter, the distinction probably means little, because both parties apparently recognize that the sales in question, if they were not industrial naphtha, would be gasoline. The amended complaint seeks to collect treble damages for alleged over-ceiling prices of petroleum products which are within the classification of industrial naphtha and for alleged sales of petroleum products which are not included within the classification of industrial naphtha. The amendment is, as both parties appear to recognize, an alternative and inconsistent basis of recovery, for the product is not both an industrial and non-industrial naphtha and solvent. The same sales are involved. Only one recovery for each violation is sought. The Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, permit such pleading. See Rules 8(a) and 8(e).

Defendant objects to the amendment upon the grounds that (1) correspondence between defendant's counsel and plaintiff's previous counsel limited plaintiff's action and his right to amend; and (2) that the proposed amendment states a new cause of action which is barred by the statute of limitations provided for by Section 108(b) of Title I of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix § 925(e).

The first objection seems clearly unsustainable. The contention that the plaintiff bargained away his right to amend is disputed and cannot be sustained. The so-called "Hamilton letter" upon which defendant relies only states what is plaintiff's interpretation of the complaint. The letter says nothing about not amending in the future. Neither does anything else presented by defendant permit the view that any one intended to bargain away the right to amend. No binding agreement or acts appear. The authorities cited by defendant do not aid it upon the facts here. Neither does there result to defendant any prejudice which would permit or require the Court to deny the amendment in the exercise of its discretion. Defendant appears to be in just as good a position to defend now as heretofore. No real prejudice appears to result to it by the amendment. The real question here is raised by defendant's second objection: Does the amendment state a new cause of action? If it does, then, regardless of the prejudice to defendant, the amendment cannot be permitted. For, as both parties here recognize, the statute of limitations has run upon a treble damages action for the sales in question. 50 U.S.C.A.Appendix § 925(e). And Rule 15 of the Federal Rules of Civil Procedure, which governs the right to amend, does not permit a new cause of action to be pleaded after the statute of limitations has run. L. E. Whitham Const. Co. v. Remer, 10 Cir., 1939, 105 F. 2d 371; Brown v. New York Life Ins. Co., D.C.N.J.1940, 32 F.Supp. 443; Schwartz v. Metropolitan Life Ins. Co., D.C.Mass. 1941, 2 F.R.D. 167; Fowles v. Commercial Casualty Ins. Co., D.C.Wash.1945, 59 F. Supp. 693, 694. Any other interpretation would make the rule superior to every statute of limitations included in laws enacted by Congress and to which the Rules of Civil Procedure were applicable. In effect, it could overrule the expressed intent of Congress. The invalidity of such a court rule is clear, and it is well settled that an interpretation leading to such a result is not favored or followed when a contrary and valid interpretation exists.

But a consideration of the defendant's second objection requires its rejection. At the outset, it seems helpful to remember that the mere pleading of an equitable action in Count II does not mean that a new cause of action is stated. A change from a legal to an equitable theory does not, of itself, create a new cause of action. Friederichsen v. Renard, 1917, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075. But even if Count II does state a new cause of action, that fact does not seem particularly important here. For the parties recognize that the statute of limitations has not run with respect to the equitable action stated therein. And the fact

that a new cause of action may be stated in Count II of the proposed amendment does not mean that the third count states a new cause of action. The third count must be considered as if a ceiling price existed at the time the sales in question were made. Because Count III assumes success under Count II and will not be operative in effect unless the relief requested by Count II is granted and is retroactive to the period covered by Count III. So if a ceiling price is established by virtue of Count II, it assumedly will be retroactive and be enforced as if it always existed. It will be applied to sales made during the period in which the established ceiling price should have been in existence. Count III assumes that a ceiling price existed on the sales in question at the time of the alleged violations. The two counts—II and III—raise separate problems. It is not an instance in which the two counts cannot be separated. It is an instance in which they can be separated, and may be separate rights of action. So Count II does not offer difficulty. Count III is the problem.

It seems obvious, of course, that the mere pleading of an alternative and inconsistent cause of action does not determine whether a new cause of action is pleaded. The real problem here is to determine whether a new cause of action is pleaded by virtue of plaintiff's attempt in his amended complaint to allege that sales which he assumedly claimed in his original complaint were sales of a petroleum product other than industrial naphtha, were in fact sales of industrial naphtha covered by Maximum Price Regulation No. 510 as well as Maximum Price Regulation No. 88, as amended.

Plaintiff here relied upon the same sales for all the relief sought. That is, plaintiff claims that certain sales either were sales of industrial naphtha or were sales of a petroleum product other than industrial naphtha. The amendment does not seek to enlarge the number or extent of the sales involved. So, in fact, the violations claimed by plaintiff arose out of the same transactions. A right of action for such violations always has rested in plaintiff. And defendant had had knowledge of the sales and facts upon which plaintiff relied, for a bill of particulars was requested by, and given to, defendant shortly after the action was commenced. According to the United States Supreme Court, such a situation requires a liberal rule to be applied. In United States v. Memphis Cotton Oil Co., 1932, 288 U.S. 62, at page 69, 53 S.Ct. 278, at page 281, 77 L.Ed. 619, Justice Cardozo, speaking for a unanimous court, said, " * * * when a defendant has had notice from the beginning that the plaintiff set up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." Mr. Justice Holmes had previously made the same statement in New York Central & H. R. R. Co. v. Kinney, 260 U.S. 340, at page 346, 43 S.Ct. 122, at page 123, 67 L.Ed. 294.

The liberal rule now applied by the Supreme Court is laid down by Rule 15(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, upon which the Supreme Court relied in Tiller v. Atlantic Coast Line R. Co., 1945, 323 U.S. 574, 65 S.Ct. 421, for determining whether a new cause of action was stated by an amendment in that case. The rule provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

The Supreme Court clearly indicated in the Tiller case that the general wrong suffered and the general conduct causing the wrong were the controlling considerations in determining if a new and different cause of action is stated under Rule 15(c). There, plaintiff sued originally under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. After the statute of limitations had run, plaintiff amended by alleging that, in addition to the negligence charged, the decedent's death was caused by a violation of the Boiler Inspection Act, and the rules and regulations thereunder. The Supreme Court held that the amend-

ment did not state a new cause of action. It said (323 U.S. at page 581, 65 S.Ct. at page 424): "* * * Both of them [the original complaint and the amendment] related to the same general conduct, transaction and occurrence which involved the death of the deceased. There was therefore no departure. The cause of action now, as it was in the beginning, is the same—it is a suit to recover damages for the alleged wrongful death of the deceased. 'The effect of the amendment here was to facilitate a fair trial of the existing issues between plaintiff and defendant.' Maty v. Grasselli [Chemical] Co., 303 U. S. 197, 201, 58 S.Ct. 507, 509, 82 L.Ed. 745. There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in the respondent's yard."

Rule 15(c), both literally applied and as applied in the Tiller case, fully supports the plaintiff's position herein. For both the allegations of the amendment and of the original complaint herein deal with the same general conduct, transactions, and occurrences which resulted in the alleged over-ceiling prices. For they deal with the same sales and the conduct in making them. The cause of action now, as it was in the beginning, is the same—it is in substance an action to recover treble damages for selling a certain petroleum product or the alleged higher than ceiling prices. The effect of the amendment here is to facilitate a fair trial of the existing issues between plaintiff and defendant. And, as in the Tiller case, there is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of certain sales made by it at certain stated times at specified prices. The identical sales are involved, and by plaintiff's own admission, recovery under one theory will prevent recovery under the other theory. A right of action always has reposed in plaintiff from the time the violations allegedly occurred.

In substance, plaintiff is only broadening the legal and factual basis upon which recovery is sought. The chief difference between the original complaint and the amendment, as noted heretofore, is that the original complaint charges violation of ceilings for a petroleum product other than industrial naphtha, and the proposed amendment, in addition and in the alternative, charges violation of ceilings for industrial naphtha. Plaintiff really alleges that the product sold may be a different one in composition and use than that charged in the original complaint. The fact that the amendment is based upon Maximum Price Regulation No. 510 in addition to Maximum Price Regulation No. 88, as amended, and was not pleaded in the original complaint, seems unimportant. A change or addition in the legal theory of the action is not necessarily fatal. Tiller v. Atlantic Coast Line R. Co., supra; United States v. Memphis Cotton Oil Co., supra; Missouri, K. T. Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355. Because the modification and addition of the legal theory here does not require any new general transaction, occurrence, or conduct to support recovery thereunder, the addition does not seem fatal.

Defendant points out the test laid down by Judge Walter Sanborn in Whalen v. Gordon, 8 Cir., 1899, 95 F. 305. The test poses three questions: (1) Will the evidence support both? (2) Will the same measure of damages support both? (3) Will a judgment against one bar the other? But this test strictly applied does not seem to represent the modern theory and approach which is used by the Supreme Court in the cases cited above. It is much narrower and should not be followed herein. The defendant falls into error by attempting to determine if a new cause of action exists by inquiring if the same identical proof will prove both theories, whereas the Supreme Court, as shown by the Tiller case, looks at the general conduct, occurrence, or transaction which constitute the wrong of which plaintiff complains—which is required by Rule 15(c). That is, the Supreme Court, in accordance with Rule 15(c), takes an "over all" ap-

proach to the problem, not a technical and narrow one. The test defendant mentions was noted but rejected under the modern approach taken under Rule 15(c) by the United States District Court for New Jersey in Brown v. New York Life Ins. Co., 1940, 32 F.Supp. 443. In fact, the test does not appear to have been the existing rule when the Federal Rules of Civil Procedure were adopted in 1938. For Rule 15(c), which obviously is broader than the test in question, codified the rule which existed when Rule 15(c) was adopted. Michelsen v. Penney, 2 Cir., 1943, 135 F.2d 409, at pages 416 and 417; Anderson v. Abbott, D.C.Ky.1945, 61 F.Supp. 888, at page 893.

Defendant has cited many cases. But in some of them the amendment is allowed, and the rules enunciated are as much in favor of plaintiff herein as in favor of defendant. The cases in which the amendment was denied are invariably cases involving facts which make the case distinguishable in result from the instant one. And some of the cases cited are old cases which were decided under theories which are no longer sustained by modern cases, and they at most only show what the old rule was. In addition to the cases cited above as authority showing the modern approach and rules for determining if a new and different cause of action is pleaded, see Glint Factors v. Schnapp, 2 Cir., 1942, 126 F.2d 207; Barthel v. Stamm, 5 Cir., 1944, 145 F.2d 487, at pages 490 and 491; Culver v. Bell & Loffland, 9 Cir., 1945, 146 F.2d 29, at page 30; Owen v. Paramount Pictures, D.C.Cal.1941, 41 F. Supp. 557; Fowles v. Commercial Casualty Ins. Co., D.C.Wash.1945, 59 F.Supp. 693, at page 694; White v. Holland Furnace Co., D.C.Ohio 1939, 31 F.Supp. 32.

■ Judge Underwood's statement in the last cited case seems appropriate here. He held (31 F.Supp. at page 34): "To give effect to Rule 15(c), 28 U.S.C.A. following section 723c, the Court should allow an amendment of a pleading where the factual situation was not changed though a different theory of recovery is presented. It provides that, 'Whenever the claim * * * arose out of the conduct, trans-

action, or occurrence set forth * * * the amendment relates back to the date of the original pleading.' "

In view of these premises, therefore, plaintiff's proposed amendment to the complaint should be, and is, allowed. It is so ordered. Defendant is allowed ten days after the filing of this order within which to file and serve its amended answer to the amended complaint.

This memorandum does not purport to finally pass upon the right of the Administrator to promulgate a ceiling price retroactively, nor does it purport to pass upon any other defense or question except plaintiff's right to amend his complaint in the manner indicated.

An exception is reserved to the defendant.