358 P.2d 694

J. Iver CARNEY and Fred Poorbaugh, d/b/a Empire Realty Company, a co-partnership, Plaintiffs-Appellees,

v.

Frank McGINNIS and Eva McGinnis, his wife, Defendants-Appellants.

No. 6619.

Supreme Court of New Mexico.

Jan. 16, 1961.

McAtee, Toulouse & Marchiondo, David R. Gallagher, Albuquerque, for appellants.

Kool, Krannawitter & Kool, Albuquerque, for appellees.

CARMODY, Justice.

The defendants below seek a reversal of the judgment entered against them in the trial court, based upon plaintiffs' claimed real estate commission.

This is the second time this case has been before us. The first appeal resulted in the reversal of a judgment rendered in favor of the defendants at the close of the plaintiffs' case. See Carney v. McGinnis, 1958, 63 N.M. 439, 321 P.2d 626. At the second trial, the court, without a jury, granted plaintiffs, the real estate brokers, judgment for $3,300.

The basic facts are not in controversy. Plaintiffs had been attempting to sell defendants' motel for a period of more than a year and a half. On March 18, 1955, plaintiffs prepared and the defendants signed a binder agreeing to sell the motel to a couple by the name of Dennis, at a fixed price and under definite terms. The printed form of the binder contained a separate statement, with lines for signature, which provided for a commission in a blank amount. This portion was not signed by the defendants, and, at the time, the blank was not filled out. The following day, the prospective purchasers submitted an offer which varied with the terms specified by the defendants, and this offer was refused. Subsequent negotiations during the same day were not productive of an agreement between defendants and the prospective purchasers. However, on the morning of March 20th, within the two-day limitation of the binder, defendants were advised by the plaintiffs that the purchasers had accepted the offer as contained in the binder and had signed the same. The binder showed upon its face that it had been signed by the purchasers at 5:00 o'clock p. m. on March 19th, and the blank appeared to have been filled out so as to show a five per cent commission was to be paid, but the trial court found that the insertion was done after the notation of the time of signing by the purchasers. Defendants refused to consummate the sale and plaintiffs thereupon sued, seeking the full five per cent commission amounting to $6,750. The defendants' original answer denied the five per cent allegation and affirmatively alleged that there was an oral agreement to pay $3,300. After the remand, following the prior appeal, the defendants amended their answer so as to allege the statute of frauds as a defense.

Defendants attack several of the trial court's findings of fact and certain of the conclusions of law based thereon. Throughout their briefs and oral argument, the defendants continued to rely upon the fact that the counter-offer or offers made by the prospective purchasers on March 19th, in effect, revoked the binder. This assertion was disposed of by this court in the prior appeal, when the court said:

"In dismissing the case, the trial court undoubtedly acted upon the as-

sumption that the written offer of the defendants, having been rejected by the counter offer, the memoranda contained in that offer respecting the brokerage listing was likewise nullified.

*     *     *     *     *

"It is immaterial as between the plaintiffs and defendants that no enforceable contract was ever consummated between the owner and the prospective purchaser."

Therefore, we do not deem it necessary to consider the matter further.

Defendants also argue that the insertion of the amount of the commission in the binder abrogated the same. However, as to this, the lower court made no finding other than that above mentioned, and by reason of what is said hereafter, the point becomes of no importance.

The basic issues of the case relate to (a) whether the listing contained in the binder was valid under § 70–1–43, N.M.S.A., 1953 Comp., (b) whether the original answer admitting the $3,300 agreement was a sufficient memorandum to take the case out of the statute of frauds, and, lastly, (c) what effect the amended pleading alleging the statute of frauds has upon the answer as originally filed.

The statute, § 70–1–43, supra, reads as follows:

"Any agreement entered into subsequent to the first day of July, 1949, authorizing or employing an agent or broker to purchase or sell lands, tenements, or hereditaments or any interest in or concerning them, for a commission or other compensation, shall be void unless the agreement, or some memorandum or note thereof shall be in writing and signed by the person to be charged therewith, or some other person thereunto by him lawfully authorized. No such agreement or employment shall be considered exclusive unless specifically so stated therein."

Admittedly, the binder contained all the essential terms and conditions of the agreement, lacking only the amount of the commission. If there were nothing further than the binder itself, of necessity we would hold that the statute had not been complied with, because there was no memorandum as to the amount of the commission. Traub v. Nason & Childers, 1953, 57 N.M. 473, 260 P.2d 379.

█ It should be noted that the great weight of authority is that a statement of the compensation or commission to be paid is a vital part of the contract, and that unless there is some memorandum in writing stating the amount of the commission, signed by the person to be charged or his agent, the contract cannot be enforced. See annotation, 9 A.L.R.2d 747, at page 754 and cases cited therein.

We recognize that there is a minority view followed in California which allows

the admission of oral testimony or other evidence as to the amount of the commission. However, we feel that the better rule is that adopted by the other jurisdictions.

Although in Lindsey v. Cranfill, 1956, 61 N.M. 228, 297 P.2d 1055, we approved the admission of oral testimony as to a telephone conversation relating to the broker's compensation, the facts of that case are vastly different from the instant one; but even so, insofar as it might be construed as allowing parol testimony as distinguished from a memorandum in writing, it is expressly disapproved.

█ As we understand the statute, it was designed to prevent brokers from claiming commissions on transactions where they had never been authorized to sell— thus, the requirement that the same be in writing. Harris v. Dunn, 1951, 55 N.M. 434, 234 P.2d 821, 27 A.L.R.2d 1277. However, we do not feel that the statute necessarily requires that the amount of the commission be specifically set out in the contract itself, so long as this can be proven by some memorandum in writing, signed by the party or his agent, so as to be a protection against fraud.

█ This being our view, it thereby becomes necessary for us to consider the effect of the defendants' original answer, and whether the subsequent amendment negatived the defendants' original admission as to what the agreement was. In re-

gard to this, it should be noted that it is generally held that where a party admits a contract in his pleadings without pleading the statute of frauds, that such admission becomes such a memorandum in writing so as to satisfy the statute of frauds. See Zlotziver v. Zlotziver, 1946, 355 Pa. 299, 49 A.2d 779; Cornett v. Clere, 1922, 193 Ky. 590, 236 S.W. 1036, 22 A.L.R. 720; and Keans, Springmann & Stipek, Inc. v. Alphonzo E. Bell Corp., 1954, 126 Cal.App.2d 311, 272 P.2d 35, citing Jamison v. Hyde, 1903, 141 Cal. 109, 74 P. 695. These same cases, and many others, state that in a case where a defendant, by his answer, admits the contract but fails to claim the benefit of the statute, he is considered as waiving his protection (annotation, 22 A.L.R. 735); but that if the admission is coupled with the claim of a protection of the statute, the claim as to the statute takes precedence as though the admission had not been made. See annotation, 22 A.L.R. 723, and cases therein cited. Therefore, it would appear, and we so hold, that if, in this case, there had been no allegation of the statute of frauds by amendment, that the defendant would have waived the defense and his answer would be a memorandum in writing so as to satisfy the statute.

We therefore must proceed to determine the legal effect of the amendment.

█ Defendants contend that by making the amendment, even though some twenty months after the original answer was filed,

the contents related back to the time of the filing of the original answer, and that therefore the pleading of the statute of frauds negatived the defendants' allegation of the oral contract as to the commission.

Prior to the adoption of the federal rules of civil procedure, we considered the doctrine of relation back of pleadings in Harris v. Singh, 1934, 38 N.M. 47, 28 P.2d 1. In that case, after an appeal to the supreme court and reversal for a new trial, the plaintiff was allowed to amend his complaint by alleging that the defendant had issued certain notes on behalf of a partnership rather than individually. The statute of limitations was pleaded by the defendant on the basis that the statute had run prior to the filing of the amended complaint. The original complaint, however, had been timely filed. We held, in effect, that the amendment was a change of theory of liability, but not as to the facts, and that therefore the amendment related back and that the statute of limitations had not run. Although the ruling was based principally upon a statute, the court implied that a liberal, rather than a strict, construction was the better rule.

Although since the adoption of the federal rules (our rule § 21–1–1(15)(c), N.M. S.A., 1953 Comp.) we have not had occasion to determine the point here involved, we do take note of the fact that in Sellman v. Haddock, 1959, 66 N.M. 206, 345 P.2d 416, we held that an amendment to the complaint related back to the filing of the original complaint so as to preclude the disqualification of the resident judge.

The federal courts which have had occasion to construe rule 15(c) are not all in accord, and, unfortunately, practically all of the reported cases deal with the relation back of an amendment in cases where the statute of limitations is the point in issue. Nevertheless, the present trend is to consider that the amendment relates back to the filing of the original pleading. This is the general holding of the federal courts when the amendment arises out of the same conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading. The principal conflict seems to arise over the application of the terms "conduct," "transaction," or "occurrence." Tiller v. Atlantic Coast Line, 1945, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465; C. Corkin & Sons, Inc. v. Tide Water Associated Oil Co., D.C.Mass.1957, 20 F.R. D. 402; Barthel v. Stamm, 5 Cir., 1944, 145 F.2d 487; Denver & Rio Grande Western Railroad Co. v. Clint, 10 Cir., 1956, 235 F.2d 445; Bowles v. Tankar Gas, D.C. Minn.1946, 5 F.R.D. 230; Wiren v. Paramount Pictures, 1953, 92 U.S.App.D.C. 347, 206 F.2d 465; and Heay v. Phillips, 9 Cir., 1952, 201 F.2d 220. See, also, Postel v. Caruso, D.C.N.J.1949, 86 F.Supp. 498, dealing with the allowance of an amendment to circumvent a defense under the statute of frauds.

1A Barron & Holtzoff, at 764, and 3 Moore's Fed.Prac., at 852, are both of the view that an amendment which merely changes the legal theory does not create a new cause of action. Thus, in the instant case, it would seem clear that the plea of the statute of frauds is merely an allegation of an additional legal theory which originally was not relied upon. It arose out of the transaction or occurrence set forth in the original answer, merely adding new consequences, and we are of the opinion that the amendment should relate back. If the amendment had introduced an entirely different claim for relief, then certainly the relation back theory would be inapplicable. 3 Moore's Fed.Prac., § 15.15, and 1A Barron & Holtzoff, §§ 447 and 448.

We are not unmindful that there are federal cases which would seem to place a more strict construction on rule 15(c), such as Gerrard v. Campbell, D.C.1949, 81 F. Supp. 752, but we believe that a more liberal construction should be given, and therefore adopt the view expressed herein.

Perhaps it should also be mentioned that the original answer and the answer as amended, together with the testimony of the defendant McGinnis at both trials, were to the effect that the agreement was to pay a $3,300 commission if the sale was consummated. However, not only was the sale not consummated, but the defendants, having pleaded the statute of frauds as a defense, should not be penalized for being truthful. In addition, the suit was for a five per cent commission, and defendants at no time admitted any agreement as to such an amount. Thus, the contract sought by plaintiffs to be enforced was void under § 70–1–43, N.M.S.A., 1953 Comp., supra.

Therefore, it will be determined that the contract sued upon is fatally defective, because it neither contains a statement as to the amount of the commission to be paid, nor is there any other memorandum in writing, signed by the party to be charged, from which the amount of the commission could be determined.

The judgment will therefore be reversed, with direction to the trial court to set aside its judgment and enter a judgment in favor of the defendants. It is so ordered.

COMPTON, C. J., and MOISE, J., concur.

CHAVEZ, J., dissenting.

NOBLE, J., not participating.