In re Barbara G. MARKUS, Debtor.

Mary–Ann Gschwend, Appellant,

v.

Barbara G. Markus; Tevis T. Thompson, Jr., Chapter 7 Trustee, Appellees.

BAP No. NC–00–1370–KMaP.
Bankruptcy No. 99–48343–NT.
Adversary No. 00–4137.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 17, 2001.

Decided Sept. 28, 2001.

**558**

Mary Ann Gschwend, Concord, CA, pro se.

Elliott Abrams, Walnut Creek, CA, for Barbara Gail Markus.

Before: KLEIN, MARLAR, and PERRIS, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This appeal involves the "relation back" of an amended pleading in the context of the dichotomy between bankruptcy "adversary proceedings" and "contested matters." It is another instance of how issues arising under the Federal Rules of Civil Procedure ("Civil Rules") acquire new nuances when incorporated by the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). Concluding that an untimely "adversary proceeding" complaint amends and "relates back" to a timely-filed "contested matter" motion, we REVERSE orders dismissing the action and incorrectly awarding sanctions.

We publish to dispel persistent confusion about how liberal "relation back" rules for amended pleadings mesh with more rigid deadlines to object to discharge and to contest dischargeability of particular debts.

## FACTS

Appellee Barbara Markus filed her voluntary chapter 7 bankruptcy the day after a state court rejected her claim of exemption from wage garnishment and ruled that her income was sufficient to warrant continued collection by appellant Mary–Ann Gschwend on a $20,088.92 judgment.

Four days before the deadline to object to discharge and file dischargeability actions under 11 U.S.C. § 523(c), Gschwend filed a pro se "Motion to Object to Debtors [sic] Discharge and Convert the Chapter 7 Case to Chapter 13" ("January 20 motion"). She alleged that Markus had committed fraud in the transaction that led to her $20,088.92 judgment, transferred assets in anticipation of an adverse judgment, and had ample net income to pay the judgment. Gschwend asked that the court order "the judgment paid" or convert the case to chapter 13.

Seven weeks later, the court ordered that: (1) the motion to convert to chapter 13 be denied; (2) Gschwend show cause why "she should not be sanctioned pursuant to Bankruptcy Rule 9011 for filing and pursuing the motion to convert" the case to chapter 13; and (3) Gschwend be barred from objecting to discharge unless she filed an adversary proceeding by a fixed date, the timeliness of such complaint being expressly left open.

The court subsequently ordered Gschwend to pay opposing counsel $500 "as compensation for the time spent responding to the motion to convert" and denied a motion for reconsideration.

Gschwend filed a "Complaint Objecting to Discharge of the Debtor" on the court-ordered deadline. She claimed that her state court judgment against Markus constituted a "debt owing that should be determined to be nondischargeable" under 11 U.S.C. §§ 523(a)(2) and (a)(6) ("March 29 complaint").

Gschwend alleged that the $20,088.92 judgment arose from an uncompleted construction contract with an entity controlled by Barbara Markus and her now-former spouse, the latter being falsely represented to be a licensed contractor pursuant to state law.

The court granted a motion to dismiss, ruling that there was no reason to relax the deadline for § 523 actions and that the complaint did not "relate back" to the January 20 motion.

The court reasoned that if the January 20 motion—styled as an "objection to discharge" under 11 U.S.C. § 727—functioned as a complaint, the allegations relevant to § 523 were inadequate: "[t]he motion refers only to alleged violations of § 727 and facts which allegedly establish those violations, other than the one paragraph that in very conclusory and vague terms refer[s] to some sort of fraud leading to a debt that was involved."

This appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(2). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether the adversary complaint "relates back" to the prior motion seeking to have the same debt ordered to be paid.

2. Whether monetary sanctions payable to the opposing party can be awarded on the court's own initiative.

## STANDARD OF REVIEW

 Whether an amended pleading "relates back" to the date of an original pleading is a question of law that we review de novo. *Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1509 (9th Cir. 1995); *Magno v. Rigsby (In re Magno)*, 216 B.R. 34, 38 (9th Cir. BAP 1997). Sanctions awards are reviewed for abuse of discretion. *Barber v. Miller*, 146 F.3d 707, 709 (9th Cir.1998); *Polo Bldg. Grp., Inc. v. Rakita (In re Shubov)*, 253 B.R. 540, 543 (9th Cir. BAP 2000). Discretion is abused when an incorrect legal standard is applied. *Allen v. Shalala*, 48 F.3d 456, 457 (9th Cir.1995).

## DISCUSSION

This appeal presents another example of tensions inherent in applying the "relation back" doctrine under Civil Rule 15(c) when bankruptcy litigation begins with a "contested matter" that should have been filed as an "adversary proceeding."

We note that the issue emphasized in this appeal is not the issue emphasized in the trial court. There, although the "relation back" issue was raised and not waived, the main focus was on whether the deadline imposed by Bankruptcy Rule 4007(c) should be relaxed on the premise that Gschwend had been misled. *See, Classic Auto Refinishing v. Marino (In re Marino)*, 37 F.3d 1354, 1358 (9th Cir.1994). On appeal, the extension question has been abandoned, leaving the "relation back" rule on center stage.

An implication of this change in emphasis is that the presence of an easily misled pro se appellant becomes irrelevant. This point is important. It needs to be clearly understood that our analysis of the application of the "relation back" rules is not affected by the pro se status of appellant. While we would express profound disappointment if Gschwend's pleadings came from a trained lawyer, the result would be the same.

## I

The "relation back" problem acquires a new nuance in bankruptcy by virtue of two parallel structures for bankruptcy litigation: the "adversary proceeding" and the "contested matter." Simple disputes are ordinarily resolved through the streamlined "contested matter" motion procedure that contemplates reaching a hearing in a matter of days or weeks rather than the longer time entailed in more cumbersome "adversary proceedings," which are essentially civil actions under the Civil Rules.

While the Bankruptcy Rules designate the types of disputes that must be resolved by adversary proceeding, *e.g.*, Fed. R. Bankr.P. 7001, litigants often prefer contested matters because of their perceived relative ease and rapid resolution. Bankruptcy courts have tolerated some procedural liberties in that respect. And the rules themselves have grey areas in which a litigation that correctly begins as a contested matter "becomes" an adversary proceeding (*e.g.*, the objection to claim that includes a counterclaim for affirmative relief).

For the most part, there is little difficulty shifting from a contested matter to an adversary proceeding. But trouble arises when limitations periods are implicated.

## II

Although referred to as a "doctrine," the "relation back" of a cause of action in amended pleadings is a rule, Civil Rule 15(c), which applies in bankruptcy adversary proceedings. Fed.R.Civ.P. 15(c), *incorporated by* Fed. R. Bankr.P. 7015.

### A

Thus, we must focus on Civil Rule 15(c)(2):

> An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, . . . .

Fed.R.Civ.P. 15(c)(2).

The first thing to note about this language is that the term "claim" means different things in the law of civil procedure and of bankruptcy. In the Civil Rules, "claim" refers to a claim for relief under a particular theory of law. In bankruptcy law, "claim" means a right either to payment or an equitable remedy and is cumulative of all the precise theories (Civil Rule "claims") that may support such payment. 11 U.S.C. § 101(5). One must be careful to note which meaning is intended if one is to avoid the fallacy of the ambiguous middle.

The question, then, is whether Gschwend's § 523 claim (civil procedure meaning) to except her claim (bankruptcy meaning) from discharge set forth in her March 29 complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in" her January 20 motion.

### B

■ "Relation back" of an adversary proceeding complaint to a prior contested matter motion necessitates two inquiries in this circuit. Is the initially-filed paper ad-

equate to constitute a "complaint" under Bankruptcy Rule 7008 (Civil Rule 8)? If yes, then: does the claim asserted in the amendment arise from the same "conduct, transaction, or occurrence" as the original claim?

### 1

█ The analysis begins with a search for a pleading to which an amendment might "relate back." Notice of the nature of the relief claimed is the primary criterion for determining whether a deficient pleading constitutes a complaint to which there might be a relation back. *Dominguez*, 51 F.3d at 1509, *construing Marino*, 37 F.3d at 1356–57. These bankruptcy decisions merely apply generally-applicable precedent under Civil Rule 15(c).

### a

There is such notice when the later-asserted claim arises out of the same conduct, transaction or occurrence already in dispute. *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 738 (9th Cir.1982). A changed legal theory "is of no consequence to the question of relation back if the factual situation out of which the action arises remains the same and has been brought to the defendant's attention by the original pleading." *Id.* at 739. What matters is that satisfying the "conduct, transaction, or occurrence" test of Civil Rule 15(c) constitutes notice. *Id.*

Civil Rule 15(c) is a corollary to Civil Rule 54(c) which provides that in non-default situations that are tried to judgment a court must award the relief to which a party is entitled regardless of whether requested in the pleading. Fed. R.Civ.P. 54(c), *incorporated by* Fed. R. Bankr.P. 7054; *Samayoa v. Jodoin (In re Jodoin)*, 196 B.R. 845, 851–52 (Bankr. E.D.Cal.1996); 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED.

PRAC. & PROC.:CIV. 3D § 2664 (1998); 10 JAMES WM. MOORE ET AL., MOORE'S FED. PRAC. § 54.72 (3d ed.2001). Similarly, it complements the rules that pleadings are deemed amended to conform to the evidence at trial and the mandate that the rules be construed to secure the just, speedy and inexpensive determination of every proceeding. Fed.R.Civ.P. 15(b), *incorporated by* Fed. R. Bankr.P. 7015; Fed.R.Civ.P. 1, *restated by* Fed. R. Bankr.P. 1001.

The Supreme Court prescribes a generous standard where, as here, an amendment straddles a statute of limitations: "There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in the respondent's yard." *Tiller v. Atl. Coast Line R.R.*, 323 U.S. 574, 581, 65 S.Ct. 421, 89 L.Ed. 465 (1945).

### b

█ The requisite appellate *de novo* review is a fact-intensive inquiry in which a liberal (i.e. generous) construction is applied to determine if the defendant had "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dominguez*, 51 F.3d at 1508, *quoting Marino*, 37 F.3d at 1357.

In *Dominguez*, the Ninth Circuit held a "Memorandum" opposing confirmation of a chapter 11 plan to suffice as a complaint for "relation back" purposes and approved decisions from other circuits that allowed a letter to a judge and a document titled "objection" to serve as complaints. *Dominguez*, 51 F.3d at 1509.

### c

This brings us to what was in the January 20 motion that might have put Markus on notice of Gschwend's claims.

The January 20 motion, entitled "Motion to Object to Debtors [sic] Discharge and Convert the Chapter 7 Case to Chapter 13," had three pages of text and three exhibits attached. The text twice referred to fraud by Markus.[1] It referred to the existence of the judgment and asked that it be ordered to be paid.[2] The exhibits included the state court's "Order Determining Claim of Exemption (Wage Garnishment)" in enforcement of the judgment.

### d

■ The controlling question is whether this information in the January 20 motion put Markus on notice of what it was that Gschwend was seeking to achieve. We do not quarrel with the court's characterization of the motion as "conclusory and vague," but we do not agree that it did not suffice as notice.

Applying the generous standard dictated by *Santana* and *Dominguez*, these references constituted actual notice to Markus that Gschwend was trying to be able to continue to enforce her $20,088.92 judgment, notwithstanding a bankruptcy discharge in a case filed the day after Gschwend prevailed in the state court garnishment dispute. In other words, she was asserting that the judgment debt should be excepted from discharge on grounds of fraud.

This effort satisfied the requirement that a defendant have fair notice of what the plaintiff's claim is and the grounds on which it rests. *Dominguez,* 51 F.3d at

1509; *Santana,* 686 F.2d at 739. Indeed, although inartful and jumbled with another request for relief that lacked merit, the January 20 motion invoked the gist of the same 11 U.S.C. § 523(a)(2) theory that was more fully stated in the March 29 complaint such that the subsequent pleading did not, in a functional sense, present a new claim.

In short, under the *Dominguez–Santana* standard, the January 20 motion, albeit a deficient pleading, nonetheless sufficed to place Markus on notice of the claim against her and substantially complied with the notice pleading requirements of Bankruptcy Rule 7008.

Because the deficient pleading was effective to give notice of Gschwend's claim, the January 20 motion was eligible for the "relation back" of amendments under Civil Rule 15(c)(2).

### 2

Having concluded that the January 20 motion constitutes a deficiently pled "complaint" that is eligible for "relation back" treatment, the question becomes whether the claims in the March 29 complaint actually "relate back" to the January 20 motion.

### a

■ A new claim asserted in an amended pleading "relates back" if it arises from the same "conduct, transaction, or occurrence" as the original claim. *Dominguez,* 51 F.3d at 1510; *Percy v. San Francisco Gen. Hosp.,* 841 F.2d 975, 978 (9th Cir. 1988).

---

1. First: "Due to the DEBTORS fraudulant [sic] actions the CREDITOR has lost her buisiness [sic] and her retirement savings and she is still paying every month for the debts stemming from this case." Motion, at p. 1.
 Second: "CREDITOR was forced to use her retirement money and has lost her business because of the DEBTORS fraudulant [sic] action." Motion, at p. 3.

2. The prayer is: "The CREDITOR prays that the DEBTORS petition be denied for the reasons stated herein and that the Court order the DEBTORS income property sold and the judgment paid or that the Court convert this Chapter 7 case to a Chapter 13 case." Motion, at p. 3.

■ A key test for assessing the "same conduct, transaction, or occurrence" standard is whether "the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading." *Dominguez*, 51 F.3d at 1510, *quoting Percy*, 841 F.2d at 978; *Santana*, 686 F.2d at 739; *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir.1966).

b

■ It is apparent that the evidence in support of the claims asserted in the March 29 complaint, entitled "Complaint Objecting to Discharge of the Debtor," would be the same as would have been offered in support of the portion of the January 20 motion that addressed the judgment debt.

The March 29 complaint essentially alleges in greater detail the facts giving rise to the judgment that figures prominently in the January 20 motion papers.

In her motion Gschwend alleged: Barbara and Albert Markus ran Pinnacle Construction as a partnership; Barbara prepared contracts and handled finances; they falsely represented that Albert was a licensed contractor; they made Pinnacle Construction appear to be in good standing with the California licensing authority by using the name and license of someone in good standing without that person's knowledge or consent; Barbara prepared papers to that effect knowing them to be false; that the last $3,000 that they received from Gschwend was obtained by misrepresentation; and, finally, that they left the project less than half-finished, with numerous code violations in the work that was done.

The complaint is more specific about the precise theories for relief. It alleges the essential elements for relief under §§ 523(a)(2)(A) and (a)(6) but continues to confuse the concepts of nondischargeability and denial of discharge.[3]

The evidence that Gschwend would present to support the claim that the judgment debt was based on fraud as asserted in the March 29 complaint would be identical to the evidence that would be needed to establish the "DEBTORS fraudulant [sic] actions" as asserted in the January 20 motion.

The same conduct, transactions, or occurrences are asserted in both the January 20 motion and the March 29 complaint. Thus, the complaint "relates back."

3

We do not read our *Magno* decision, upon which the bankruptcy court relied, as compelling a different conclusion. The result is different because of the facts, but the analysis is the same. Contrasting this appeal with *Magno* illuminates the concept of notice for purposes of determining whether an initial pleading gives notice of a potential § 523 cause of action.

In *Magno*, a timely § 727 complaint grounded solely on concealment of assets and false oath and that mentioned the existence of a debt owed to plaintiff in the context of showing plaintiff's standing did not suffice as notice that a five-year-old wrongful death judgment might be claimed to be excepted from discharge as willful and malicious under § 523(a)(6). The *Magno* plaintiff conceded that he was not attempting in the complaint to place the facts underlying the judgment in issue and that it was only later that he became

---

**3.** For example: "Such acts constituted the false pretenses that give rise to a denial of discharge of the debt pursuant to 11 U.S.C., 523(a)(2)(A) [sic]" Complaint, at p. 7.

And: "It is, therefore, respectfully requested that the court deny the discharge of the debtor and sustain the judgment award." Complaint, at p. 8.

564

aware of a theory that might allow the judgment to be excepted from discharge. *Magno*, 216 B.R. at 36–37. Nothing about the initial allegations in *Magno* hinted at the existence of facts that would support a § 523 action.

We rejected the trial court's holding that § 523 exception to discharge claims are automatically "lesser included" claims within a § 727 objection to discharge. *Id.* at 37 & 42. We ruled that mere mention of the debt owed to plaintiff was not enough to give notice of the facts under the new claim so as to constitute the requisite nexus. *Id.* at 42.

What we meant by this ruling in *Magno* was that mere mention of the existence of the debt to plaintiff, without more, was not a sufficient allegation of Civil Rule 15(c) "conduct, transaction, or occurrence" from which a new § 523 claim could arise. Hence, the amendment asserting the new § 523 claim did not "relate back" to the original complaint.

In contrast, Gschwend actually asserted in the initial pleading that she was a fraud victim who was trying to get paid. She made two direct references to fraud, attached a copy of the judgment, and asked that the court direct that the judgment be paid. Moreover, the Markus bankruptcy was filed the day after she lost a garnishment dispute relating to the judgment, which was then only a few months old, rather than five years old.

The nub of the difference is that Gschwend's assertion that Markus cheated her was enough to constitute an attempt to set forth the "conduct, transaction, or occurrence" that could give rise to a claim for exception to discharge under § 523.

4

We reject as incorrect the appellee's argument that the January 20 motion does not provide a basis for "relation back" of a § 523 theory because it was .couched in terms of "objection to discharge" under § 727 and did not mention § 523.

What matters is that there be notice of the conduct, transaction, or occurrence that is being called into question. It is settled that once a defendant is in court on a claim arising out of a particular transaction or set of facts, the defendant is not prejudiced if another claim on a different theory, but arising out of the same set of facts, is added. *Tiller*, 323 U.S. at 580–81, 65 S.Ct. 421; *Santana*, 686 F.2d at 739.

All Gschwend had to say in order to come within the "conduct, transaction, or occurrence" requirement of Civil Rule 15(c) was, "Markus cheated me." She said much more.

Since the fraud alleged in the March 29 complaint is the fraud alleged in the January 20 motion, the "new" § 523(a) claim asserted on March 29 "relates back" to January 20. It follows that dismissing the complaint as time-barred was error.

## III

Our conclusion that the March 29 complaint amended and "related back" to the January 20 motion also places in proper procedural context the order sanctioning Gschwend $500 under Bankruptcy Rule 9011 payable to opposing counsel "as compensation for the time spent responding to her" January 20 motion.

### A

Since the January 20 motion constituted a complaint to which the subsequent amendment related back, none of the orders on the January 20 motion became final until the bankruptcy court dismissed the adversary proceeding.

Interlocutory sanctions orders in adversary proceedings are not appealable until the adversary proceeding is resolved.

*Cunningham v. Hamilton County,* 527 U.S. 198, 209, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999); *Shubov,* 253 B.R. at 543. Accordingly, it is procedurally correct for Gschwend to challenge those sanctions in this appeal.

**B**

■ We are mindful that appellee did not brief the sanctions issue in reliance on our motions panel ruling that the sanctions order required a separate notice of appeal. However, rulings on appellate motions, while entitled to deference, do not bind merits panels. *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.),* 128 F.3d 1294, 1300 n. 7 (9th Cir.1997); *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1441 (9th Cir.1991). Not only are appellate motion rulings interlocutory in nature, they also are decided based on sketchy information compared to what is before a merits panel.

Now that we are able to discern the precise procedural posture in which sanctions were ordered, it is apparent that the order was interlocutory and did not become appealable until the adversary proceeding was dismissed. Gschwend properly raised the sanctions as an issue in her timely appeal from the dismissal.

While we ordinarily would invite appellee to file a supplemental brief before deciding the $500 sanctions issue, we need not do so if such briefing could not affect the outcome.

**C**

We are faced here with plain error. The sanctions order issued under Bankruptcy Rule 9011 on the court's own initiative requiring payment of $500 to opposing counsel "as compensation for the time spent responding to her motion to convert" violated the black-letter terms of the rule. No brief could save it.

The theory of the sanctions was that Gschwend violated Bankruptcy Rule 9011(b)(2) because conversion to chapter 13 at the request of a creditor, being statutorily impossible, was not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr.P. 9011(b)(2).

Assuming (without deciding) that Gschwend violated Bankruptcy Rule 9011(b)(2), the error lies in the sanction imposed.

Attorney fees and expenses incurred as a direct result of the violation can be shifted to an opponent only on that opponent's motion and only if warranted for effective deterrence. Fed. R. Bankr.P. 9011(c)(2); *Shubov,* 253 B.R. at 546.

Additionally, if the sanctions request had been raised on motion, it would have been mandatory that Gschwend have first been afforded and rejected the safe harbor opportunity to withdraw or appropriately correct her motion. Fed. R. Bankr.P. 9011(c)(1)(A). This requirement is strictly enforced. *Barber,* 146 F.3d at 711; *Shubov,* 253 B.R. at 545–46.

■ Summed up, attorney fees and expenses can be shifted to an opponent under Bankruptcy Rule 9011: if, and only if, a party makes a motion after precise compliance with the prescribed safe harbor procedure that affords an opportunity to withdraw or correct offending matter without liability; and only if warranted for effective deterrence; and only to the extent that the fees and expenses are incurred as a direct result of the rule violation. Fed.R. Bankr.P. 9011(c)(1)(A) & (c)(2); *Barber,* 146 F.3d at 711; *Shubov,* 253 B.R. at 545–46.

■ While the court is permitted to award sanctions on its own initiative by

issuing an order to show cause without following the safe harbor procedure, it is constrained in the sanctions that it can award. Fed. R. Bankr.P. 9011(c)(1)(B) & (c)(2). It may make directives of a non-monetary nature, or, so long as the order to show cause is issued before voluntary settlement or dismissal, may order a penalty paid into court. Fed. R. Bankr.P. 9011(c)(2). But the court is forbidden to shift litigation expenses to the other party when it is acting on its own initiative. *Id.*; *Shubov*, 253 B.R. at 546.

Hence, the sanctions award that requires Gschwend to pay $500 to opposing counsel as compensation for time spent in responding to her motion is plain error and cannot stand.

\*\*\*

We REVERSE both the order dismissing the adversary proceeding and the order awarding impermissible sanctions and REMAND for further proceedings.